## Summerville *versus* Wann.

*Mechanics' Lien for Machinery.—Alterations in Building.—New Erections under Act of 1836.*

1. The Act of 21st of April 1856, supplemental to the Mechanics' Lien Law of 1836, must be construed with reference to it. It introduces no new principle into the lien law, nor does it authorize a lien on personal property. It specifies the objects *for which*, and not *on which*, a lien may be had.

2. The supplement of 1856 does not authorize the filing of a lien for work done about, or materials furnished for, the alteration or repairs of an old building, but only extends the provisions of the Act of 1836 to certain things or accessions for which claims may be filed.

3. Where the frame of an old building is neither raised nor enlarged, but one kind of machinery, of a different kind and character, is merely substituted in place of that which was before in the building, it is not a "new erection," within the meaning of the Act of 1836, relative to mechanics and materialmen.

ERROR to the Common Pleas of *Jefferson county*.

This was a *scire facias* sur mechanics' lien, brought in the Common Pleas of Jefferson county, to December Term 1858, No. 32, by John P. Wann against James Summerville.

Summerville was the owner of a frame saw-mill, about 27 by 52 feet, which had been roofed and boarded up soon after its erection, and worked, some ten or twelve years, by water-power.

In the summer of 1857, he employed Wann to construct and put up in this mill an engine, with the fixtures necessary to run it by steam.

The exterior of the building was unchanged, except by the erection of a shed which covered the boilers, which, with the smoke-stack, was put up outside of the mill; but all the old machinery in the mill was removed.

To secure the price of this engine and machinery this lien was filed against the building (describing it), and the curtilage appur

[Summerville v. Wann.]

tenant thereto. On the trial of the *sci. fa.* the court ruled that, although there was no "new erection" within the meaning of the Act of 16th of June 1836, yet the lien was good under the Act of 21st of April 1856, and that the plaintiff was entitled to recover.

A verdict was accordingly rendered for the plaintiff for $203.56, and judgment having been entered thereon, the defendant sued out this writ, and assigned for error—

1. The court erred in answering in the negative, the third point put by the defendant below, which point is as follows:— "That if the building sought to be charged with the lien in this case was not a new erection, but that the work done in 1857 and 1858 was a mere repairing or even a remodelling of the inside of the old building, it is not the subject of a mechanics' lien, and, therefore, the plaintiff cannot recover."

2. The court erred in instructing the jury that "It was *a new mill*, but not a new building."

3. The court erred in instructing the jury "that the Act of the 21st April 1856 covers this case."

4. The court erred in charging the jury that "in this case the materials were furnished for fixtures about the mill connected with the steam-engine which changed the character of the entire structure; and if such is the case, the lien is valid."

*B. F. Lucas*, for plaintiff in error, who was defendant below, contended: 1. That the court should have affirmed the point mentioned in the first assignment of error. The Act of 1836, and all the cases under it, confine the lien of mechanics, &c., to "buildings erected:" Miller v. Oliver, 8 Watts 514; Landis's Appeal, 10 Barr 379; Perigo v. Vanhorn, 2 Miles 359; Driesbach v. Keller, 2 Barr 77; Armstrong v. Ware, 8 Harris 520; Norris's Appeal, 6 Casey 124.

In this case the building was unaltered: the change was all in the interior of the mill.

2. That the court erred in attempting to distinguish between the mill and the building: There could be no mill in this case without the building. The building is that on which the lien operates; the machinery, like the ground, is only an incident: Wigton & Brooks's Appeal, 4 Casey 161.

If the old water-machinery had been worn out, and was replaced by new machinery of the same kind, it would have been a "repaired," not a "new mill," even if the arrangement of the machinery had been modified or improved.

3. The Act of 1856 does not cover this case. It is in these words:—

"From and after the passage of this act, the provisions of the act entitled 'An act relating to the lien of mechanics and others

[Summerville *v.* Wann.]

upon buildings, passed the 16th day of June, A. D. 1836, and the supplements thereto, be, and the same are hereby extended as fully as the same are now applicable to buildings, to every steam-engine, coal-breaker, or parts thereof, pump-gearing, hoisting-gearing, fixture or machinery in and about mills of any kind, iron or coal-works, coal-mines and iron-mines.' "

It covers the machinery named, but was not meant to reach cases provided for in the Act of 1836. If the alterations in this case were equal to a "new erection," the new act is not needed. The new act extends to the things named in it, *as fully* as the Act of 1836, and not *more fully*, as seems intended by this lien. It covers the machinery, but not the building. This claim is filed against the building, and not against the machinery. That which is to be bound by the lien, must be accurately described: Wigton & Brooks's Appeal, 4 Casey 161.

4. The court erred in answering this point also: the new machinery, it is submitted, did not "change the character of the entire structure." It remained a saw-mill, after the introduction of the new machinery, as before. The structure was unchanged.

*J. G. Gordon & Brother*, for the defendant in error, argued that the change made by the labour of Wann, was radical, and was equivalent to a "new erection," under the Act of 1836: Norris's Appeal, 6 Casey 120; Pennock *v.* Hoover, 5 Rawle 307; and admitting that the court below erred in charging that the case was covered by the Act of 1856, this plaintiff was entitled to a binding charge on the other point. This court will therefore not reverse. McCullough *v.* Norris, 5 Barr 285; Gast *v.* Porter, 1 Harris 533.

But the Act of 1856 does cover this case. It was not intended for machinery in new buildings, for the Act of 1836 is sufficient for that purpose: 17 S. & R. 413; 3 Watts 140; 5 Watts 115.

Nor was it intended to cover buildings and fixtures of lessees for years, and thus meet the cases in 9 Barr 117, and 2 Harris 118, for no such reason is expressed. The Act of April 21st 1854, for Schuylkill county, was designed for such cases, and might have been extended through the state, if that had been the intention of the legislature. The provisions of the Act of 1836 are extended to machinery by the Act of 1856, and it was, therefore, designed for cases where new and costly machinery is put into old buildings, as is often done. The lien is filed against the building "for the machinery," as the schedule shows. It could not be filed against each separate piece of the machinery: Nelson *v.* Campbell, 4 Casey 156; Lauman's Appeal, 8 Barr 477.

The opinion of the court was delivered, October 28th 1860, by STRONG, J.—The Act of April 21st 1856, which, it is con-

[Summerville *v.* Wann.]

tended, supports the claim filed in this case, is exceedingly obscure, and it is not easy to determine satisfactorily what the legislature intended. Did they mean that the person who might furnish a steam-engine or fixture should have a lien upon the engine or fixture alone; that he who might furnish a part of a coal-breaker, should have a lien upon that part only which he furnished? If such was their intention, if the purpose was to designate the object upon which the lien should fasten, rather than the materials or thing furnished, for which a claim may be filed, the execution of the law will lead to some very singular results. It would afford no adequate security to the mechanic or material-man for the debt due him. He could then only sell under his *levari facias* the identical article which he had furnished, which, after having been set in place and removed, would probably sell for less than its cost. Its separation, also, from other parts of a building or machinery, would be attended with destruction to them, and might thus impair the security of other lien-creditors. Again, if the things enumerated in the act are designed to be placed upon the same footing with buildings, and the claim is to be enforced against them separately, as the act declares that the provisions of the Act of 1836 shall be extended to them as fully as they are applicable to buildings, and as the lien upon buildings extends to the ground upon which they stand, a sale under a judgment obtained in a *scire facias* would carry the ground covered by the steam-engine, or the pump-gearing, or the fixture; and as there might be many such liens on the machinery, or parts of machinery, in a single building, there might be numerous sales of the ground upon which it stood. Distribution among the different lien-creditors would be impossible. A construction that leads to such results is unreasonable. It is not to be supposed that such was the legislative intention. The Act of 1856 was supplementary to the Act of 1836, and should be construed with reference to that. The policy of that act was to give a lien upon real estate, to which accessions had been made by the labour and property of a mechanic or material-man. Never, before the Act of 1856, certainly, was any attempt made to extend the lien beyond the realty, except to coal leases in Schuylkill county. But the things described in that act are all personalty; and if they are the objects upon which the lien fastens, an entirely new principle has been introduced. We think, therefore, that whatever may have been the purpose of the legislature, they could not have had in view anything else than a lien upon real estate; and if not, then it is *for* the steam-engine, coal-breaker, or parts thereof, pump-gearing, hoisting-gearing, fixture, or machinery, &c., not *on* them, that the lien is given.

Was it then intended to authorize filing a claim for debts

[Summerville *v.* Wann.]

contracted, work done, or materials furnished for or about the alteration or repairs of an old building, and not about its erection or construction? We think not. The act declares that the provisions of the Act of 1836, and its supplements, as fully as they are now applicable to buildings, shall be extended to certain things for which claims may be filed. How fully are those things applicable to buildings? The answer is, only to buildings in the erection or construction of which they have been used, or for the erection of which they have been procured. To any other than such buildings, the provisions of the Act of 1836 are not applicable; and, to say the least, it is not apparent that the legislature designed to extend them to others. The extension spoken of in the act is not to another class of buildings, or to buildings at all, but to certain accessions, including machinery in and about mills of any kind, iron or coal works, and iron-mines. True, it is to machinery in and about mills *of any kind*, but this evidently refers to the genus of the mill, as an oil-mill, a grist-mill, or a saw-mill, rather than to varieties in age, or differences in the time of construction.

It is argued, however, that such an interpretation of the Act of 1856 makes it unmeaning. It is said, that without the act, there was a lien upon new mills for steam-engines and machinery used in their construction, and that, unless the lien be now extended to buildings altered or repaired, the act has accomplished nothing. It must be conceded, that for engines and machinery, constituting a part of a new mill, there was a lien under the Act of 1836; but, if placed in the mill, or about it, and no constituent part of the erection, they were not within the lien laws. So, if used in or about iron or coal works, but not furnished for or about the erection ·or construction of a building, they could not be made the ground of a lien. There is, therefore, something upon which the Act of 1856 can operate, without its being held · applicable to old buildings altered or repaired.

· We have said enough to indicate that, in our opinion, it was erroneous to instruct the jury that the case of the plaintiff below was covered by the Act of April 21st 1856.

It is, however, argued by the defendant in error, that, even if the court erred. in holding that the Act of 1856 authorized filing a claim, although the mill was not a new erection, yet that no harm was done by ·the instruction, because the mill was a new erection within the meaning of the Act of 1836. Without undertaking to review the cases which have discussed what changes made in an old building constitute it a new one, within the sense of the mechanics' lien law, cases not easily reconcilable, it may suffice now to say, we are all of opinion that the alterations made in the saw-mill, against which this claim was filed,

[Summerville *v.* Wann.]

were not an erection of the building. They were very great, but they were principally changes in the internal structure and arrangement. The old machinery was taken out and replaced by new, of a different character. But the frame of the old mill was left. The building was not raised higher, nor enlarged. Were we to rule that a mere substitution of one kind of machinery for another, within a mill, without any change in the frame which encloses it, amounts to a new erection of the building, we should go much beyond what has been decided in any other case. We concur, therefore, with the opinion of the Court of Common Pleas, that what was done to the building did not constitute a new erection within the meaning of the Act of 16th June 1836. The case is sent back only because the learned judge ruled that it was covered by the Act of 1856, and that the claimant might have a lien for alterations of an old mill.

Judgment reversed, and a *venire de novo* awarded.

THOMPSON, J., dissented.